ALBERTA L. DODGE, PLAINTIFF-APPELLANT, v. JOHNS-MANVILLE SALES CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, AND GEORGE HUBERT, DEFENDANTS-RESPONDENTS.

Submitted May 29, 1942—Decided September 18, 1942.

For the plaintiff-appellant, *Collins & Corbin* (*Edward A. Markley* and *John J. Breslin, Jr.*).

For the defendants-respondents, *Coult, Satz, Morse & Coult* (*Joseph Coult*).

The opinion of the court was delivered by

CASE, J. This is an appeal from a judgment of nonsuit entered in the Supreme Court against the plaintiff and in favor of the defendants. The suit was for personal injuries suffered by plaintiff in coming down a movable ladder from the attic to the second story of her home while the employees of Johns-Manville Sales Corporation were engaged in fulfilling a contract with her to insulate exposed surfaces in the unfinished attic which topped her two story frame house. Hubert was the foreman in charge of the work.

There was no stairway leading to the attic. Instead there was a hatchway, ordinarily closed by a trap door. When entrance to the attic was desired a ladder, regularly kept in the cellar, was brought up and placed with the bottom resting

on the second story floor and the top against the side, or well, of the hatchway; and the trap door was removed. That had been the method of access during the entire period of plaintiff's occupancy—twenty-three years. Plaintiff, as she testified, had made that use of the ladder many, many times; she was entirely familiar with the functioning of it.

The work crew came at an hour when plaintiff was not at home. The men asked how to get to the attic, and plaintiff's mother told them about the ladder. They got the ladder and placed it in position. A part of the work consisted of insulating the trap door. The rock wool was blown up through an outside hose and to keep it from drifting down to the second story the men covered the hatch opening with canvas and used their own outside ladder to get to and from the attic. Later in the day plaintiff came home and was asked by Hubert if she would like to see the work. She said that she would. So, quoting from her testimony, "He said as soon as they finished blowing in the rock wool that the men would have their lunch, and when they finished their lunch I could go up and see the work. * * * He said he would have to go up the outside way to remove the canvas cover. * * * And I would go up the inside way." Miss Dodge examined the ladder by putting her hands against it. She found that it felt firm and that it looked "normal." She then went to the attic, using the ladder, made her observation and came down again. While in the attic she had noticed that there were many flies, some of which she crushed against the window. She went downstairs, got a pail of water and again went to the attic for the purpose of cleaning the windows; and during her stay there the men were hammering heavily in installing the insulation at and about the hatchway. The ladder was not fastened either to the floor or to the hatchway; and there were no facilities for fastening it. Miss Dodge's method of getting down was to take a sitting position on the top of the hatchway—on the crossboard (apparently sitting on the part of the hatchway against which the top of the ladder rested). There was no rail or other contrivance extending up to grab hold of, and she would put her feet on

the ladder, holding on the frame of the hatchway on the side, and as she turned and got on the ladder she would take hold of the ladder and go down. On this occasion she made her first ascent, her first descent and her second ascent in entire safety. The ladder was apparently as it should be. It did not move as she was thus using it and, so far as she observed, it remained in the same position from one use to the next. She noticed nothing wrong. As she was going down the second time and had reached the stage where she placed her full weight on the ladder, the ladder slid and threw her.

The trial court held that there was nothing in the case to go to the jury and nonsuited.

Miss Dodge appeals and makes these points on her brief: (1) That the trial court erroneously nonsuited the plaintiff because the testimony presented fact questions for the consideration and decision of the jury; (a) the defendants having placed the ladder in position owed a duty to the plaintiff to use reasonable care to properly place it (or give warning of its unsafe condition) and to do nothing to displace it or make it unsafe after having placed it (or give warning of its unsafe condition), and under the evidence whether or not the defendants violated those duties was a question of fact for the jury; (b) whether or not the plaintiff was guilty of contributory negligence was a question of fact for the jury; (c) the plaintiff did not assume the risk—to say the least that question was for the jury. (2) The trial court erred in overruling certain hypothetical questions put to the professional engineer, Clark. (3) The trial court erred in overruling certain other questions to the professional engineer, Clark.

We think that the nonsuit may not be sustained on the grounds of contributory negligence or assumption of risk by the plaintiff. That leaves two questions: (1) Whether there was proof of negligence by the defendants and (2) whether the evidence rulings were wrong and harmful.

We find no proof of negligence on the part of the defendants. It is true that the defendants put the ladder in posi-

tion; but the plaintiff thereafter climbed up or down the ladder thrice without mishap, and according to her observation the ladder was properly placed. The testimony does not substantially support an inference of negligence in the original placement, and there is no proof that any of the defendant's employees, or indeed anyone except the plaintiff, touched the ladder between that time and the plaintiff's fall. It may be that after the plaintiff went to the attic to clean the windows and before she came down from that duty the pounding at and near the hatchway jarred the ladder out of position. While that is purely an inference we think it is a permissible inference; but the plaintiff on her second trip did not go at the invitation of the defendants and there is nothing to indicate that the pounding was an act of negligence. We have searched the transcript in vain for evidence from which to draw the proof, or even the inference, that the men were negligent in the manner of doing their work or that they pursued the wrong course in achieving the result for which the plaintiff and the defendant company contracted. It was not the defendant's equipment that gave way. The defendants had no authority to nail the ladder securely in place. After all, the house and the ladder were the property of the plaintiff, and the defendants had to take them as they were. That was the field where, by plaintiff's invitation, evidenced by her contract, they were to work. Unless the men were shown to have been unworkmanlike or negligent in their operations we do not understand upon what theory they may be held responsible for a condition that was incident to such labors. We find nothing in the contract by which, either expressly or impliedly, they were to maintain a safe way for plaintiff to pass to and from the attic in the performance of her domestic duties. It does not even appear that defendants knew that the plaintiff had reached the point where she wished to descend. She did not warn them of her purpose to go down, and she did not ask them whether the ladder was safely placed. She simply completed her self appointed task, having known all the while of the manner in which the work was being done and of the vibrations caused by it, and, so far as appears, without a word, under-

took to go down. She testified: "*A.* I had to go downstairs because I had to get ready to go to Lodi. *Q.* Then what? *A.* They lifted the cover up—— *Q.* Now, let me ask you * * *." That interrupted and uncompleted answer is all that we find to charge the defendant with knowledge of plaintiff's movements; we consider that it is not enough to weigh substantially for plaintiff in her duty to carry the burden of proof. We agree with the trial court that the evidence did not present a case for the jury.

It remains to consider the evidence rulings. A witness was put on the stand as a construction engineer. He was asked several long and involved hypothetical questions directed toward the propositions that the heavy pounding at and about the hatchway could result in the movement of the ladder from a proper position to one of insecurity and, fitting that hypothesis to the facts of the case, whether it was likely that the pounding was an efficient cause. The proposition sought to be proved was, briefly, that a ladder placed loosely against a framework upon which there was heavy and protracted pounding, so severe that the vibration was felt by Miss Dodge while standing in another part of the attic cleaning the windows, might be thereby jarred from position. It appears to us that the affirmative of that proposition is within common knowledge and that expert evidence was therefore inappropriate and inadmissible, *State* v. *Lederman,* 112 *N. J. L.* 366; *New Jersey Traction Co.* v. *Brabban,* 57 *Id.* 691; *Cook* v. *State,* 24 *Id.* 843, 852; but, even if there was technical error in the rulings, no harm resulted because, assuming the questions to have been admitted and the answers to have been of the sort that plaintiff anticipated, the proof would still fall short of proving the negligence that was essential to plaintiff's case.

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CASE, BODINE, PERSKIE, COLIE, DEAR, WELLS, HAGUE, THOMPSON, JJ. 10.

*For reversal*—PARKER, DONGES, HEHER, PORTER, RAFFERTY, JJ. 5.